Michael G. Doan #175649
Karen S. Spicker #127934
Doan Law, LLP
1930 S Coast Hwy #206
Oceanside, CA  92054
Phone (760) 450-3333 • Fax (760) 720-6082
karen@doanlaw.com
Attorney for Plaintiff, DERRICK LEMORRIS DANIELS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DERRICK LEMORRIS DANIELS
  Plaintiff,

Vs.

NAVY FEDERAL CREDIT UNION, and
Does 1 through 10,

  Defendants.

Case No.:  **'19 CV 2218 AJB WVG**

**COMPLAINT FOR DAMAGES RESULTING FROM VIOLATING 11 U.S.C. §362; CCC 1785.25(a); CCC 1788.17; CVC 5753; CBPC §17200; 15 U.S.C. § 1681s-2(b)(1)**

**JURY TRIAL DEMANDED**

## I.
## INTRODUCTION

1)  Plaintiff, Derrick Lemorris Daniels ("Daniels"), brings this lawsuit against Defendant, Navy Federal Credit Union ("NFCU"), for violating the Automatic Stay under 11 U.S.C. §362, the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25 ("CCCRA"), California Civil Code §1788.17 ("RFDCPA"), California Vehicle Code

5753, and California Business & Professions Code §17200 (Unfair Competition Law "UCL").

2) In summary, NFCU unlawfully attempted to perfect a lien on a vehicle during a Chapter 13 Bankruptcy Case, obtained title to the vehicle and refused to forward the same to Daniels, and knowingly reported inaccurate information to consumer credit reporting agencies.

3) The legislative history of Chapter 13 Bankruptcy provides that Congress sought to promote the use of Chapter 13 in appropriate cases.  Chapter 13 enables families to get caught up on house and car loans while it provides a mechanism for repayment of unsecured debt.  Although debtors might choose Chapter 13 over Chapter 7 for a variety of reasons, curing mortgage and auto loan defaults is a primary incentive for them to do so.

4) The California legislature determined there is a need to ensure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for consumers' rights to privacy.  The Legislature's express purpose of enacting the CCCRA was to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, hiring of a dwelling unit, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

5) On September 3, 1999, "urgency legislation" was passed adding Civil Code §1788.17 to the RFDCPA which incorporated therein nearly all of the provisions of the Federal Fair Debt Collection Practices Act ("FDCPA") and superseded numerous provisions of the RFDCPA, such as Civil Code §1788.14, to the extent inconsistent, and which was enacted in 1977.  The

California Legislature made the following findings and purpose in creating Civil Code §1788, the RFDCPA:

1) *The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers*
2) *There is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other.*
3) *It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.*

## II.
## JURISDICTION AND VENUE

6) Jurisdiction of this Court arises under 28 U.S.C. §1334(b). See also Gray v. Preferred Bank, 2010 U.S. Dist. LEXIS 104645, at *6-8 (S.D. Cal. Sep. 30, 2010)).

7) Venue is proper in this District as Plaintiffs are natural persons residing in the County of San Diego and the Defendants regularly conduct business within the County of San Diego. Furthermore, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County of San Diego, California. Therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III.
## PARTIES

8) Daniels is a disabled veteran receiving VA benefits, and a natural person residing in San Diego County, California.

9) Daniels is a "debtor" as that term is defined by 11 USC 101(13).

10) Daniels is a "consumer" as that term is defined by Cal. Civ. Code §1785.3(b) and "debtor" under California Civil Code §1788.2(h).

11) NFCU is a credit union headquartered at 820 Follin Ln SE, Vienna, Virginia 22180.

12) NFCU is a "creditor" as defined by 11 USC 101(10).

13) NFCU is a "person" as that term is defined in Cal. Civ. Code §1785.3(j) and California Civil Code §1788.2(g).

14) NFCU is a "Furnisher of Information" within the meaning of Cal. Civ. Code §1785 *et. seq.*

15) NFCU in the ordinary course of business regularly engages in debt collection as that term is defined in California Civil Code §1788.2.

16) NFCU is a "debt collector," as that term is defined by California Civil Code §1788.2(c).

17) Daniels is ignorant of the true names and capacities of each Defendant sued herein as DOES 1 through 10 (hereinafter "Does"), inclusive, and therefore sues those Defendants by such fictitious names.  Daniels will seek leave to amend this Complaint to include the true names and capacities of those Doe Defendants when they have been ascertained.  At all times mentioned herein, each of the Does sued herein was the agent and/or employee of one or more of the remaining Defendants and was acting within the purpose and scope of such agency and/or employment.

**IV.**
**FACTS**

18) Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

19) On April 1, 2013, Daniels purchased a 2010 Toyota Camry ("vehicle") via secured financing thru Toyota Motor Credit ("Toyota").

20) On August 20, 2014, Daniels obtained a loan for approximately $15,681.96 from NFCU in an attempt to refinance the vehicle.

21) Since the loan from NFCU only partially paid off Toyota's secured loan, Toyota retained its legal owner status on the vehicle and title.

22) Although the loan from NFCU alleged it was secured by the vehicle, NFCU never became the legal owner of the vehicle, received title, and never perfected its alleged lien.

23) On May 15, 2015, Daniels filed a Chapter 13 Bankruptcy Case (15-03234) to consolidate his unsecured debt and pay the balance of the secured loan to Toyota.

24) On the May 15, 2015 Bankruptcy filing date, Toyota held the title to the vehicle and a perfected lien on the vehicle.

25) Toyota was listed on schedule "D" as a secured creditor on the vehicle with a remaining balance in the amount of $793.00.

26) NFCU was listed on schedule "F" with three separate "unsecured" loans in the amounts of $15,444.00, $14,241.00, and $7,050.00.

27) On information and belief, NFCU always considered the $15,681.96 loan to Daniels as unsecured.

28) On information and belief, NFCU registered the $15,681.96 loan in its records as unsecured.

29) Pursuant to its records and accounting, on June 4, 2015, NFCU filed an unsecured proof of claim in the amount of $16,362.41.

30) NFCU intentionally waived any alleged lien on the vehicle so that it could be paid as an unsecured creditor, pursuant to United Sav. Ass'n of Tex. V.

Timbers of Inwood Forest Assocs., 484 U.S. 365, 379, (1988). Glens Falls Ins. Co. v. Strom, 198 F. Supp. 450, 459 (S.D. Cal. 1961).

31) On June 12, 2015, the Chapter 13 filed his notice of classification of claim confirming the claim from NFCU was unsecured.

32) On August 27, 2015, Daniels exemption of $10,600.00 in the vehicle removed the vehicle from the estate.

33) Daniels exemption of $10,600.00 later became not subject to attack due to Bankruptcy Rule 1019(b)(2)(i).

34) On January 12, 2016, Toyota's secured claim on the subject vehicle was paid in full.

35) Despite being paid in full and receiving full satisfaction of its lien on January 12, 2016, Toyota never sent title on the vehicle to Daniels.

36) On information and belief, Toyota sent title on the vehicle to NFCU immediately after January 12, 2016.

37) NFCU never forwarded the title to Daniels after January 12, 2016.

38) Instead, NFCU proceeded to become the legal owner of the vehicle immediately after January 12, 2016.

39) Since NFCU never obtained relief of stay under 11 USC 362, its actions to become the legal owner were void pursuant to Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992).

40) The Chapter 13 plan dated May 13, 2015 was confirmed on April 22, 2016, treated the claim of NFCU as unsecured, and confirmed NFCU had no interest in the vehicle.

41) The confirmation of the Chapter 13 plan vested the vehicle in Daniels free of any claim by NFCU pursuant to 1327(c).

42) The confirmation of the Chapter 13 plan further removed the vehicle from the Bankruptcy estate and vested the vehicle in Daniels pursuant to 1327(b).

43) On May 11, 2016, the Chapter 13 Trustee filed his Notice of Claims Filed and Intention To Pay Claims, which listed NFCU as unsecured claim in the amount of $16,362.41.

44) The Claims Register for the Case at the Bankruptcy Court ECF website indicates Toyota had the only secured claim and that the claims of NFCU were unsecured.  See https://ecf.casb.uscourts.gov/cgi-bin/SearchClaims.pl?680447494962811-L_1_0-1

45) On January 28, 2019, Daniels converted his case from Chapter 13 to Chapter 7.

46) At the time of conversion, NFCU had been paid $7,372.12 on its unsecured claim.

47) On January 28, 2019, Christopher Barclay was appointed as the duly authorized and qualified Chapter 7 Trustee ("Trustee").

48) NFCU sent a letter dated March 7, 2019 to the Trustee wherein it falsely represented that it did not have title to the vehicle when in fact it did, that its lien might not have been timely perfected, that the vehicle would be property of the Estate, that the vehicle was not exempt when in fact it was, and that the vehicle should be taken from Daniels.

49) On March 25, 2019, the Trustee contacted Daniels' legal counsel, Doan Law Firm ("DLF"), and demanded turnover of the vehicle unless Daniels made an offer to buy it from the estate.

50) On March 25, 2019, Daniels retained DLF to oppose the Trustee's position.

51) On March 25, 2019, Daniels first became aware of all the unlawful conduct NFCU engaged in with respect to the vehicle.

52) From March 2019 thru June 2019, DLF had numerous communications with the Trustee in opposition to the Trustee's demand for turnover.

53) On April 14, 2019, the vehicle was no longer part of the Chapter 7 estate in light of Daniels' 100% exemption in the vehicle claimed under CCP 703.140(b)(2).

54) On April 23, 2019, Daniels received his chapter 7 discharge.

55) On April 24, 2019, DLF sent three (3) letters to Experian, Equifax, and TransUnion with the following instructions:

*Enclosed please find a copy of the Order of Discharge as well as the Certificate of Service for all creditors whose debts were recently discharged. Please update the subject credit file(s) to reflect the discharged status on all accounts reported to you. Pursuant to the Fair Credit Reporting Act and the Regulations, FTC Commentary, CDIA Guidelines, METRO2, Fair Credit Reporting Act, California Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Discharge Injunction of 11 USC 524, you must now report the following on all affected accounts:*

    *1)*   *"Current Balance" of "$0.00"*
    *2)*   *"Account Status" of "$0.00 balance/closed account,"*
    *3)*   *"Amount Past Due" of "$0.00,"*
    *4)*   *"FCRA Compliance/Delinquency Date" as of (date of discharge), and*
    *5)*   *"Payment History Profile" must no longer reflect pmt history and default.*

*To the extent that any of the discharged debts are reporting anything other than as disclosed above, please consider this letter as a Dispute under the Fair Credit Reporting Act and a request that you immediately activate the Automated Dispute Resolution System Program with respect to this written notice.*

*In order to facilitate such investigations on the disputed items, you are also requested to forward this letter, and the enclosures, to each of the creditors listed above. If for any reason you decline to send a copy of this letter and the enclosures to any of the creditors, please advise immediately.*

56) On information and belief NFCU received notification of this dispute from Equifax, Experian, and TransUnion.

57) On information and belief NFCU failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line.

58) On August 29, 2019, the Trustee filed a Notice of Intended Action wherein NFCU and the Trustee agreed to void the lien of NFCU pursuant to 11 USC 549.

59) The Notice of Intended Action was filed as a direct result of NFCU'S unlawful behavior in becoming the legal owner of the vehicle and obtaining title thereto.

60) On September 3, 2019, DLF on behalf of Daniels filed a well-supported and lengthy opposition to the Trustee's Notice of Intended Action.

61) The opposition alerted the Trustee to the false representations by NFCU and addressed how the Bankruptcy Code under 362 governed the unlawful conduct by NFCU as a stay violation, since there was never any post-petition transfer by Daniels under 549.

62) On September 4, 2019, the Trustee agreed with the opposition, withdrew the Notice of Intended Action, and indicated he would no longer pursue the vehicle on behalf of the estate.

63) On September 5, 2019, DLF on behalf of Daniels made a Demand to NFCU to release its unlawful lien on the title and registration with the DMV, withdraw its status of legal owner, and pay damages for its unlawful lien.

64) On September 9, 2019, Marya Zoberi at NFCU confirmed receipt of the Demand.

65) On September 16, 2019, counsel for the Trustee sent DLF the subpoena results it previously obtained from NFCU.

66) The subpoena results contained a copy of the title to the vehicle in NFCU'S possession, which confirmed NFCU had lied in its letter dated March 7, 2019 wherein it stated, *"According to our records, we have not received title to the vehicle."*

67) The title was dated March 2, 2018 and listed NFCU listed as the legal owner of the vehicle.

68) The title dated March 2, 2018 confirmed as a matter of law that NFCU was unlawfully placed on title during the active Chapter 13 Bankruptcy.

69) As a matter of law, NFCU had knowledge from the title dated March 2, 2019 that its lien was unlawful yet did nothing to release its lien or otherwise mitigate its unlawful conduct.

70) On September 26, 2019, DLF spoke with new counsel for NFCU and agreed to hold off filing suit in Federal Court pending its subpoena results from the DMV.

71) On September 26, 2019, legal counsel for NFCU confirmed to DLF that despite possessing title evidencing its legal owner status, *"In NFCU'S systems the loan account was listed as an unsecured loan."*

72) On November 4, 2019, DLF on behalf of Daniels followed up with counsel for NFCU and made Daniels' second demand to NFCU to release its unlawful lien, providing a plethora of legal authority in support of the release.

73) On November 4, 2019, DLF on behalf of Daniels made his third demand to NFCU to release its unlawful lien and forward title.

74) On November 4, 2019, DLF on behalf of Daniels made his fourth demand to NFCU to release its unlawful lien and forward title.

75) On November 4, 2019, DLF on behalf of Daniels made his fifth demand to NFCU to release its unlawful lien and forward title.

76) On November 6, 2019, DLF on behalf of Daniels made his sixth demand to NFCU to release its unlawful lien and forward title.

77) On November 16, 2019, DLF on behalf of Daniels made his seventh demand to NFCU to release its unlawful lien and forward title.

78) As of the date of filing of this Complaint and despite the forgoing seven (7) demands for lien release and title, NFCU has not released its unlawful lien, nor has it forwarded title to Daniels.

79) But for Daniels retaining DLF to oppose the Trustee's Notice of Intended Action, the Trustee would have seized Daniels' vehicle and sold it without any compensation.

80) Since Daniels retained DLF to oppose the Trustee's Notice of Intended Action, he remains in possession of his vehicle but without title.

81) Since Daniels retained DLF to oppose the Trustee's Notice of Intended Action, the liability exposure to NFCU was mitigated with Daniels keeping the vehicle.

82) Notwithstanding Daniels ability to prevail in keeping the vehicle, he sustained actual damages as a direct result of the unlawful conduct by NFCU with respect to the vehicle and improper credit reporting, including but not limited to:

   a. Unmarketable title to the vehicle for nearly four (4) years, at $40 per day, of over $56,000.00 and increasing;
   b. Inability to trade in the car for bigger vehicle because of new child born 2/14/19;
   c. Emotional distress, pain and suffering, sleeplessness, hopelessness, annoyance, aggravation, anxiety, depression, loss of worry, fear, distress, frustration, embarrassment, etc. for both unmarketable title to the vehicle for almost four (4) years, the fear of losing the vehicle to the Chapter 7 Trustee, and false credit reporting;
   d. Aggravation to his previous PTSD;
   e. Increased medical care from the VA;
   f. Out of pocket costs;
   g. Loss of considerable time;
   h. Damage to credit score and credit worthiness;
   i. Increased interest rates and finance charges paid;
   j. Loss of opportunity to obtain credit, damage to reputation, ,
   k. Attorney fees and costs of over $30,000.00 to date in opposing the Trustee and pursuing the title from NFCU; and
   l. Other incidental and consequential damages.

# V.
## <u>SIX (6) CAUSES OF ACTION</u>

## 1)  WILLFUL VIOLATIONS 11 U.S.C. §362

83)  Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

84)  The Automatic Stay under 11 USC §362(a) provides in pertinent part:

> *Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of*
>> *(4) any act to create, perfect, or enforce any lien against property of the estate;*
>> *(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;*
>> *(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;*

85)  NFCU violated 362(a)(4) when it became a legal owner of the vehicle while the vehicle was property of the estate prior to April 21, 2016.

86)  NFCU violated 362(a)(5) when enforced its status of legal owner of the vehicle against property of the Daniels after April 21, 2016.

87)  NFCU violated 362(a)(6) when attempted to recover its pre-petition claim against Daniels by enforcing its status of legal owner of the vehicle after April 21, 2016.

88)  A creditor also has an affirmative duty to remedy an automatic stay violation once it becomes aware of the violation. <u>Linblade v. Knupfer (In re Dyer)</u>, 322 F.3d 1178, 1192 (9th Cir. 2003).

89)  NFCU committed further stay violations when it failed to remedy its violations under 362(a)(4), 362(a)(5), and 362(a)(6) once it was aware it was

the legal owner of the vehicle with the title is possessed dated March 2, 2018.

90) NFCU'S refusal to release its lien and to forward title after the April 23, 2019 discharge not only was an additional discharge violation under 11 USC 524, but created continuing liability under 362(k).

> *Cognizable effects of a violation of the automatic stay may linger after the formal expiration of the  stay. For example, the stay with respect to an individual debtor expires upon entry of discharge or dismissal of the case. 11 U.S.C. § 362(c)(2).*
> *Nevertheless, consequences directly attributable to the violation of the stay before its expiration may continue to be visited upon a debtor for an additional period of time. <u>Snowden v. Check Into Cash of Wash., Inc. (In re Snowden</u>), 769 F.3d 651, 659 & 662 (9th Cir. 2014). Hence, liability for a stay violation continues at least until full restitution is actually made or, if after the expiration of the stay, the court orders full restitution. <u>Snowden</u>, 769 F.3d at 659 & 662 (ambiguous settlement offer does not terminate accrual of liability for stay violation).*
> <u>Sundquist v. Bank of Am., N.A.</u>, 566 B.R. 563, 586 (Bankr. E.D. Cal. 2017).

91) NFCU'S violations of 362(a)(4), 362(a)(5), and 362(a)(6) subjects it to damages under 11 USC §362(k), which provides the following remedies:

> *Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.*

92) Willful violations of 11 USC §362 are essentially strict liability in nature. See <u>Associated Credit Servs. v. Campion (In re Campion),</u> 294 B.R. 313, 317-18 (B.A.P. 9th Cir. 2003); <u>Emmert v. Taggart (In re Taggart)</u>, 548 B.R. 275, 290 (B.A.P. 9th Cir. 2016); <u>In re Shaw</u>, No. NC-15-1406-BSKu, 2017 Bankr. LEXIS 1786, at *15 (B.A.P. 9th Cir. June 27, 2017).

93) Damages from willful stay violations are mandatory. See <u>Simbas v. Taylor</u> <u>(In re Taylor)</u>, 884 F.2d 478, 483 (9th Cir. 1989) (*If a bankruptcy court finds that a willful violation of the automatic stay has occurred, an award of actual damages to an individual debtor, including attorney's fees, is mandatory.*)

94) The absolute refusal to comply with the seven (7) demands, warnings, and authorities to release the lien and forward title are not only additional violations under pursuant to <u>Linblade v. Knupfer (In re Dyer)</u>, but also amount to the blatant *reckless and callous disregard to the Bankruptcy Code and rights of Daniels* which mandates additional punitive damages.  See <u>In re Bloom</u>, 875 F.2d 224, 228 (9th Cir. 1989), *"We have traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others."*

95) Since NFCU has compliance issues with the Bankruptcy Code, punitive damages are necessary to force NFCU to provide additional training to its employees, new policies, and new guidelines, to effectuate future compliance with the Bankruptcy Code.

96) Such punitive damages will save future debtors from similar situations such as Daniels who has had to resort to an Order from this Court as his only remaining means to force NFCU to comply with 11 USC 362 and 11 USC 524 and release the title.

97) *"In the context of the Bankruptcy Code, a key societal interest underlying § 362(k)(1) is to have a self-executing private law mechanism to enforce the automatic stay that is crucial to effective operation of the bankruptcy system. The statutory punitive damages remedy evinces a public purpose that the automatic stay not be a toothless tiger that can be flouted with impunity."* <u>Sundquist v. Bank of Am., N.A.</u>, 566 B.R. 563, 615 (Bankr. E.D. Cal. 2017).

## 2)  WILLFUL VIOLATIONS OF 15 U.S.C. §1681s-2(b)(1)

98)  Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

99)  NFCU is presently reporting to consumer credit reporting agencies that a <u>balance</u> of $7,238.00 exists on account number 9444.

100) NFCU is presently reporting to consumer credit reporting agencies that $7,238.00 is <u>past due</u> on account number 9444.

101) The forgoing reporting is inaccurate since the discharge eliminated the balance of $7,238.00 and past due amount of $7238.00.

102) The forgoing reporting is incomplete since there is no mention the account was subject to the Chapter 7 discharge.

103) The forgoing reporting also fails to comply with the Fair Credit Reporting Act and the Regulations, FTC Commentary, CDIA Guidelines, METRO2, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Discharge Injunction of 11 USC 524, which requires the following reporting:

     a)    *"Current Balance" of "$0.00"*
     b)    *"Account Status" of "$0.00 balance/closed account,"*
     c)    *"Amount Past Due" of "$0.00,"*
     d)    *"FCRA Compliance/Delinquency Date" as of (date of discharge), and*
     e)    *"Payment History Profile" must no longer reflect payment history and default.*

104) California Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, to wit:

*After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:*

> *(A) conduct an investigation with respect to the disputed information;*
> *(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];*
> *(C) report the results of the investigation to the consumer reporting agency;*
> *(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and*
> *(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –*
> > *(i) modify that item of information;*
> > *(ii) delete that item of information; or*
> > *(iii) permanently block the reporting of that item of info.*
> See 15 U.S.C. § 1681s-2(b)(1).

105) On April 24, 2019, DLF contacted Equifax, Experian, and TransUnion to dispute the accuracy of the information being reported about Daniels.

106) Upon information and belief, pursuant to 15 U.S.C. §1681i(a)(2), NFCU received notification of this dispute from Equifax, Experian, and TransUnion.

107) NFCU failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of Section 1681s-2(b)(1).

108) Notwithstanding NFCU'S actual knowledge that Daniels no longer owed any balance or past due amount, NFCU'S failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Daniels' rights under the FCRA.

109) In addition to the violation as described above, NFCU failed to satisfy its duty under Section 1681s-2(b) of updating incomplete or inaccurate

information it had previously reported to Equifax, Experian, and TransUnion upon receipt of each notice from Equifax, Experian, and TransUnion that Daniels disputed the accuracy of the previously reported information.

110) NFCU'S failure to report that Daniels disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Daniels. Gorman v. Wolpoff & Abramson, LLP, et al., 584 F.3d 1147 (9th Cir. 2009); See also Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008).

111) As a direct and proximate result of NFCU'S willful and/or negligent refusal to comply with the FCRA as outlined above, Daniels has suffered substantial loss and damages entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. §1681o.

112) NFCU'S complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Daniels, and the injuries suffered by Daniels are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against NFCU, pursuant to 15 U.S.C. §1681n(a)(2).

### 3) WILLFUL VIOLATIONS OF CCC 1785.25(a)

113) Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

114) NFCU is presently reporting to consumer credit reporting agencies that a balance of $7,238.00 exists on account number 9444.

115) NFCU is presently reporting to consumer credit reporting agencies that $7,238.00 is past due on account number 9444.

116) The forgoing reporting is inaccurate since the discharge eliminated the balance of $7,238.00 and past due amount of $7238.00.

117) The forgoing reporting is incomplete since there is no mention the account was subject to the Chapter 7 discharge.

118) The forgoing reporting also fails to comply with the Fair Credit Reporting Act and the Regulations, FTC Commentary, CDIA Guidelines, METRO2, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Discharge Injunction of 11 USC 524, which requires the following reporting:

    a)    *"Current Balance" of "$0.00"*
    b)    *"Account Status" of "$0.00 balance/closed account,"*
    c)    *"Amount Past Due" of "$0.00,"*
    d)    *"FCRA Compliance/Delinquency Date" as of (date of discharge), and*
    e)    *"Payment History Profile" must no longer reflect payment history and default.*

119) California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §1785.25(a) ("CCCRA") provides in pertinent part:

> *A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.*

120) NFCU has violated Cal. Civ. Code §1785.25(a) since it is aware of the discharge, knows the debt is no longer collectable against Daniels, and knows that its reporting is incomplete and inaccurate since it is not reporting a $0.00 balance, $0.00 past due, and that the account was subject to the Chapter 7 discharge.

121) NFCU'S violation of Cal. Civ. Code §1785.25(a) subjects it to damages under Cal. Civ. Code §1785.31(a) which provides the following remedies:

> *Any consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following:*
>> *(1) In the case of a negligent violation, actual damages, including court costs, loss of wages, attorney's fees and, when applicable, pain and suffering.*
>> *(2) In the case of a willful violation:*
>>> *(A) Actual damages as set forth in paragraph (1) above:*
>>> *(B) Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper;*
>>> *(C) Any other relief that the court deems proper.*

## 4)  WILLFUL VIOLATIONS OF CCC 1788.17

122) Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

123) California Civil Code §1788.17 of the RFDCPA provides in pertinent part:

> *Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of §1692b to §1692j, inclusive, of, and shall be subject to the remedies in §1692k of Title 15 of the United States Code.*

124) 15 U.S.C. §1692f(6) of the FDCPA provides in pertinent part:

> *A debt collector may not use unfair or unconscionable means to collect a debt. Without limiting  the general application of the foregoing, the following conduct is a violation of this section:*
>> *(6) Taking or threatening to take any nonjudicial action to the effect of dispossession or disablement of property if-*
>>> *(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;*

125) 15 U.S.C. §1692(e)(2)(A)(1) of the FDCPA provides in pertinent part:
> *A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt*

> *without limiting the general application of the foregoing; the following conduct is a violation of this section:...*
> > *(2) The false representation of –*
> > > *(A) the character, amount, or legal status of any debt; ….*

126) NFCU violated 15 U.S.C. §1692f(6) as incorporated into the RFDCPA by taking the nonjudicial action of unlawfully becoming a lienholder on the vehicle in violation of 11 USC 362 and disabling Daniels' ability to transfer and/or encumber the same unless payment was made to NFCU, when in fact NFCU had no right to possession of the vehicle thru an enforceable security interest.

127) NFCU violated §1692(e)(2)(A)(1) as incorporated into the RFDCPA when it used false, deceptive, and misleading means to obtain legal owner status in violation of 11 USC 362, thereby falsely representing its legal status as secured when in fact it was not.

128) California Civil Code §1788.17 requires that NFCU comply with the provisions of 15 U.S.C. §1692f(6) and §1692(e)(2)(A)(1).

129) The foregoing violations of 15 U.S.C. §1692f(6) and §1692(e)(2)(A)(1) by NFCU resulted in separate violations of California Civil Code §1788.17.

130) California Civil Code Section 1788.17 provides that NFCU is subject to the remedies of 15 U.S.C. §1692k for failing to comply with the provisions of 15 U.S.C. §1692f(6) and §1692(e)(2)(A)(1).

131) The foregoing violations by NFCU were willful and knowing violations of Title 1.6C of the California Civil Code (RFDCPA), are sole and separate violations triggering statutory damages of up to $1,000.00 under California Civil Code Section §1788.30(b).

132) The foregoing violations by NFCU trigger statutory damages of up to $1,000.00 under 15 U.S.C. §1692k pursuant to California Civil Code Section 1788.17.

### 5)  WILLFUL VIOLATIONS OF CVC 5753

133) Daniels realleges and incorporates by reference the forgoing paragraphs as if fully set forth herein.

134) NFCU waived its security interest when it filed an unsecured proof of claim.

135) NFCU received a total payment of $7,372.12 on its claim while the case was pending in Chapter 13.

136) The confirmed Chapter 13 plan signed by Daniels served as a written instrument signed Daniels, designated Daniels as transferee after Toyota was paid, and served to authorize release of the Title to Daniels.

137) The forgoing payments, waiver of security, and confirmed plan served to pay NFCU in full for the satisfaction of its security interest.

138) Daniels was lawfully entitled to the title of the vehicle once Toyota was paid in full in January 2016.

139) Despite the forgoing, NFCU never transferred title to Daniels.

140) California Vehicle Code Section §5753(a) provides

> *It is unlawful for any person to fail or neglect properly to endorse, date, and deliver the certificate of ownership and, when having possession, to deliver the registration card to a transferee who is lawfully entitled to a transfer of registration.*

141) California Vehicle Code Section §5753(c)(1) provides:

> *Within 15 business days after receiving payment in full for the satisfaction of a security interest and a written instrument signed by the grantor of the security interest designating the transferee and authorizing release of the legal owner's interest, the legal owner shall release its security interest and mail, transmit, or deliver the vehicle's*

*certificate of ownership to the transferee who, due to satisfaction of the security interest, is lawfully entitled to the transfer of legal ownership.*

142) NFCU violated California Vehicle Code Section §5753(a) since it never delivered the certificate of ownership to Daniels who was lawfully entitled to a transfer of the same.

143) NFCU violated California Vehicle Code Section §5753(c)(1) since it never delivered title within 15 days of payment and written instrument.

144) NFCU'S violation of California Vehicle Code Section §5753(c)(1) subjects it to damages under California Vehicle Code Section §5753(e) which provides the following remedies:

*A legal owner or lessor that fails to satisfy the requirements of subdivisions (c) and (d), shall, without offset or reduction, pay the transferee twenty-five dollars ($25) per day for each day that the requirements of subdivisions (c) and (d) remain unsatisfied, not to exceed a maximum payment of two thousand five hundred dollars ($2,500). If the legal owner or lessor fails to pay this amount within 60 days following written demand by the transferee, the amount shall be trebled, not to exceed a maximum payment of seven thousand five hundred dollars ($7,500), and the transferee shall be entitled to costs and reasonable attorneys fees incurred in any court action brought to collect the payment. The right to recover these payments is cumulative with and is not in substitution or derogation of any remedy otherwise available at law or equity.*

145) NFCU received a written demand for payment September 5, 2019, more than sixty (60) days ago, and of which payment has never been made.

146) NFCU is subject to the treble damages provision of $7,500.00 under California Vehicle Code Section §5753(e).

### 6) WILLFUL VIOLATIONS TRIGGERING CBPC §17200

189) Daniels realleges and incorporates by reference the above paragraphs as though set forth fully herein.

190) Daniels and NFCU are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code §17201.  Cal. Bus. & Prof. Code §17204 authorizes a private right of action.

191) Cal. Bus. & Prof. Code §1704, a provision of the UCL (Cal. Bus. & Prof. Code §§17200-17209), confers standing to prosecute actions for relief not only on the public officials named therein, but also on private individuals, i.e., "any person acting for the interest of itself, its members or the general public." [emphasis added].  The California Supreme Court explained that the purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. McGill v. Citibank, N.A., 2 Cal.5th 945,954 (2017). The primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction. Id.  Public injunctive relief is a remedy available to private plaintiffs under the UCL. Id. at 961.

192) "Unfair competition is defined by Bus.& Prof. Code §17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair", business act or practice, (3) a "fraudulent" business act or practice, and (4) an "unfair, deceptive, untrue, or misleading advertising."  The definitions in §17200 are written in the disjunctive, meaning that each of these "wrongs" operate independently from the others.

### A. "Unlawful Prong"

193) As set forth above, NFCU knowingly and intentionally violated 11 U.S.C. §362, California Civil Code §1785.25, California Civil Code §1788.17, and

California Vehicle Code 5753, and satisfies the "unlawful" business acts or practices perpetrated on borrowers.

201) NFCU had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

202) Daniels reserves the right to allege further conduct that constitutes other unfair business act or practices.  Such conduct is ongoing and continues to this date.

### B. "Unfair Prong"

203) NFCU'S actions and representations also constitute an "unfair" business act or practice under §17200 in that its conduct is substantially INJURIOUS TO Daniels, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Without limitation, the business practices described herein are "unfair" and shock the conscience because they offend established public policy, violated 11 U.S.C. §362 and 11 U.S.C. §524, violated 15 U.S.C. §1681s-2(b)(1), violated California Civil Code §1785.25, violated California Civil Code §1788.17, violated California Vehicle Code 5753, and are objectively immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Daniels.

204) NFCU could and should have furthered its legitimate business interests by not perpetrating fraud on Daniels.

205) Daniels could not have reasonably avoided the injury he suffered.

206) Daniels reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

# VI.
## PRAYERS FOR RELIEF

WHEREFORE, Daniels having set forth his claims for relief against NFCU herein, Daniels respectfully requests this Court to enter Judgment against NFCU as follows:

A. Declaratory relief finding that NFCU willfully violated the automatic stay under 362 and continues to do so until it releases the title;

B. An award of Actual Damages of no less than $150,000.00 under 11 U.S.C. §362(k) for the actual damages Daniels sustained;

C. An award of Punitive Damages of no less than $450,000.00 under 11 U.S.C. §362(k) for the *reckless and callous disregard of 11 USC 362 and rights of Daniels*;

D. An award of Attorney's fees and costs in bringing this action, according to proof and with a fee multiplier, pursuant to 11 U.S.C. §362(k);

E. Injunctive Relief under 11 U.S.C. §362(k) to remove NFCU as legal owner, forward title to Daniels, and remove false credit reporting;

F. Injunctive relief under under 11 U.S.C. §362(k) that NFCU provide additional training to its employees, new policies, and new guidelines, to effectuate future compliance with the Bankruptcy Code;

G. Actual damages in an amount to be proved at trial pursuant to 15 U.S.C. §1681o.

H. Punitive damages as provided for by 15 U.S.C. § 1681n(2);

I. Statutory damages as provided for by 15 U.S.C. § 1681n(2);

J. Costs and attorneys' fees as pro provided for by 15 U.S.C. § 1681n(3) and 15 U.S.C. § 1681o(2);

K. An award of Actual Damages of no less than $150,000.00 under Cal. Civ. Code §1785.31(a) for the actual damages Daniels sustained;

L. An award of Attorney's fees and costs in bringing this action, according to proof and with a fee multiplier, under Cal. Civ. Code §1785.31(a):

M. An award of Punitive Damages award of $5000.00 per violation pursuant to Cal. Civ. Code §1785.31(a) and Cal. Civ. Code §3294;

N. Injunctive Relief under Cal. Civ. Code §1785.31(b) that NFCU report to consumer credit reporting agencies on all Daniels' accounts that they have a $0.00 balance, $0.00 past due, and that the accounts were subject to the Chapter 7 discharge.

O. An award of Actual Damages of no less than $150,000.00 under Cal. Civ. Code §1788.30(a) for the actual damages Daniels sustained;

P. An award of Attorney's fees and costs, according to proof and with a fee multiplier, under Cal. Civ. Code §1788.30(a):

Q. Statutory damages of **$**1,000.00 pursuant to California Civil Code §1788.30(b);

R. Statutory damages of **$**1,000.00 pursuant to California Civil Code §1788.17 incorporating 15 U.S.C. §1692k for violations of 15 U.S.C. §1692f(6) and 15 U.S.C. §1692(e)(2)(A)(1), and other economic damages;

S. Damages of $2,500.00 pursuant to California Vehicle Code §5753(e) for over one hundred (100) days that the requirements of California Vehicle Code §5753(c)(1) were not complied with;

T. An award of Attorney's fees and costs, according to proof and with a fee multiplier, under California Vehicle Code §5753(e);

U. Damages of $7,500.00 pursuant to California Vehicle Code §5753(e) for failing to pay $2,500.00 by November 5, 2019;

V. That the conduct of NFCU complained of herein be determined and adjudged to be in violation of the rights of Daniels under Bus. & Prof. Code §17200;

W. An award of actual damages subject to proof at trial against NFCU pursuant to Cal. Bus. & Prof. Code §17200;

X. An award of punitive damages of $5000 against NFCU pursuant to Cal. Bus. & Prof. Code §§17200 et. seq.;

Y. An award of attorney's fees and costs of suit against NFCU pursuant to Cal. Bus. & Prof. Code §§17200, et. seq.;

Z. An award of equitable and injunctive relief pursuant to Cal. Bus. & Prof. Code § 17200 against NFCU;

AA. Declaratory Relief against NFCU, declaring their practices in violation of 11 USC 362 and 524, California Civil Code Section §§1788.14, and 1788.17 and 15 U.S.C. § 1692, et seq., California Vehicle Code §5753, and constitute "unfair" and "unlawful" business Practices under Bus. & Prof. Code §17200; and

BB. Such other and further relief as the Court may deem just and proper.


Dated: November 20, 2019                    Respectfully submitted,

                                    By:     s/ Karen Spicker
                                            Karen Spicker, Attorney for Plaintiff


## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Dated this _20__ day of November 2019.

                                            s/ Karen Spicker
                                            Karen Spicker, Attorney for Plaintiff